UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

Nº 05 Civ. 6745 (RJS)

_____

LONGVIEW EQUITY FUND, L.P., AND LONGVIEW INTERNATIONAL EQUITY FUND, L.P.,

Plaintiffs,

VERSUS

IWORLD PROJECTS & SYSTEMS, INC., AND ROBERT HIPPLE,

Defendants.

_____

MEMORANDUM AND ORDER
March 26, 2008

_____

RICHARD J. SULLIVAN, District Judge:

Plaintiffs Longview Equity Fund, L.P. and Longview International Equity Fund, L.P. (collectively "Plaintiffs") bring this action against defendants iWorld Projects and Systems, Inc. ("iWorld") and Robert Hipple (collectively "Defendants"). Plaintiffs assert four claims against defendant Hipple: (1) violations of Section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b) (the "Exchange Act"), and Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated thereunder; (2) control person liability pursuant to Section 20(a) of the Exchange Act; (3) common law fraud under New York law; and (4) breach of representation under New York law. Defendant Hipple now moves for summary judgment on all four claims.

For the reasons that follow, the Court construes Hipple's motion as seeking a change of venue, judgment on the pleadings, and summary judgment. Hipple's motion for a change of venue is denied. Hipple's motion for judgment on the pleadings as to the breach of representation claim is granted. In all other respects, Hipple's motions are denied.

## I. BACKGROUND

The complaint in this case was originally filed on July 27, 2005. The case was reassigned to the undersigned from the Honorable Kenneth M. Karas, District Judge, on September 4, 2007.

On December 12, 2007, the Court held a conference to address certain outstanding pre-trial issues. At this conference, defendant Hipple requested permission to file a motion for summary judgment, noting that he had not previously been permitted to do so. By order dated December 18, 2007, the Court instructed Hipple to file his summary judgment motion by January 22, 2008. In that order, the Court advised Plaintiffs that they need not respond to the summary judgment motion unless directed to by the Court.

On January 29, 2008, the Court held a pre-trial conference, at which time the Court entertained limited oral argument on Hipple's summary judgment motion and reserved judgment. (*See generally* Transcript of January 29, 2008 Conference ("Jan. 29 Tr.")).

It should be noted that, although iWorld has previously appeared in this matter, iWorld has indicated that it cannot afford to hire an attorney to defend itself in this action, and does not plan on appearing for trial. (*See* Jan. 29 Tr. at 2-4.) An order to show cause on a default judgment against iWorld is currently pending.

## II. STANDARD OF REVIEW

The standard for summary judgment in this Circuit is well-established. Summary judgment is only appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court is to "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 219 (2d Cir. 2004); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)); *see also Rivkin v. Century 21 Teran Realty LLC*, 494 F.3d 99, 103 (2d Cir. 2007). "Conclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) (citation omitted). However, "if 'there is any evidence in the record from any source from which a reasonable inference in the [nonmoving party's] favor may be drawn, the moving party simply cannot obtain a summary judgment.'" *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d Cir. 2007) (quoting *R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 59 (2d Cir. 1997)) (alteration in original).

"[W]here the nonmoving party will bear the burden of proof at trial, Rule 56 permits the moving party to point to an absence of evidence to support an essential element of the nonmoving party's claim." *Bay v. Times Mirror Magazines, Inc.*, 936 F.2d 112, 116 (2d Cir. 1991) (citations and internal quotations omitted). In such a case, the

plaintiff must "come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on that element" in order to withstand summary judgment. *Burke v. Jacoby*, 981 F.2d 1372, 1379 (2d Cir. 1992) (citations omitted). If plaintiff fails to do so, summary judgment is appropriate. *Id.*

Finally, *pro se* submissions must be construed "liberally" and the court must "interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir. 1994)).

III. DISCUSSION

A. Venue

Hipple's first argument is that venue is improper in this Court. (*See* Hipple Mem. at 4.) Hipple asserts that venue in New York is improper because "<u>none</u> of the conduct alleged as the basis for any securities fraud occurred in or was connected to New York." (*Id.* (emphasis in original).) He also asserts that he is not bound by the forum selection clause in the Subscription Agreement, dated March 31, 2005 (the "Agreement"), despite the fact that he negotiated and signed the Agreement in his official capacity as Chief Executive Officer of iWorld, because the language of the clause does not govern this dispute. (*See* Jan. 29 Tr. at 17.) Plaintiffs respond that (1) the Agreement, which underlies the dispute, contains provisions pursuant to which the parties consented to jurisdiction in New York; (2) the attorneys who represented Plaintiffs in connection with the agreement were located in New York; and (3) in any event, defendant Hipple has waived any argument related to venue by voluntarily appearing in this action. (*See* Jan. 29 Tr. at 14-16.)

In keeping with the court's duty to interpret *pro se* filings "to raise the strongest arguments that they suggest," *McPherson*, 174 F.3d at 280, the Court interprets Hipple's arguments pertaining to venue as a motion pursuant to 28 U.S.C. § 1404(a) to transfer the case from the Southern District of New York to the Middle District of Florida. (*See* Hipple Mem. at 5); *see also Kolko v. Holiday Inns, Inc.,* 672 F. Supp. 713, 716 (S.D.N.Y. 1987) ("Section 1404(a) sets no time limit at which a motion to transfer may be made."). Plaintiffs' arguments regarding waiver "are thus inapposite." *Montgomery v. Tap Enters., Inc.*, No. 06 Civ. 5799 (HB), 2007 WL 576128, at *3 n.7 (S.D.N.Y. Feb. 26, 2007). However, Hipple's motion is denied because, for the reasons that follow, venue is proper in the Southern District of New York.

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Motions for transfer lie within the broad discretion of the district court and the court should consider notions of convenience and fairness on a case-by-case basis. *D.H. Blair & Co., Inc. v. Goltdiener,* 462 F.3d 95, 106 (2d Cir. 2006) (citing *In re Cuyahoga Equip. Corp.,* 980 F.2d 110, 117 (2d Cir. 1992)). The burden of demonstrating that the action should be transferred to another district lies with the moving party. *Id*. In considering such a motion, the court must determine first whether the case could have

3

been brought in the proposed transferee district. *Reliance Ins. Co. v. Six Star, Inc.*, 155 F. Supp. 2d 49, 56 (S.D.N.Y. 2001). The court must then determine, pursuant to a host of factors, whether transfer is appropriate. *D.H. Blair*, 462 F.3d at 106. These factors include: "(1) the plaintiffs' choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties." *Id.* at 106-07.

An additional factor to consider is the existence of a forum selection clause. In New York, forum selection clauses "are *prima facie* valid absent a showing they were signed as a result of fraud or overreaching, that they are unreasonable or unfair, or that enforcing them would contravene a strong public policy of the forum." *Orix Credit Alliance, Inc. v. Mid-South Materials Corp.*, 816 F. Supp. 230, 233 (S.D.N.Y. 1993) (citing *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972)). Forum selection clauses are properly considered as an additional factor in a § 1404 analysis. *Id.* ("A motion to transfer under § 1404(a) is governed by the terms of the statute itself, and a court should consider the preferences of the parties, as embodied in a contractual forum selection clause, only to the extent that the federal statute itself permits."); *see also Stewart Org. Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) ("The presence of a forum-selection clause such as the parties entered into in this case will be a significant factor that figures centrally in the district court's calculus [in deciding a motion to transfer]."). "However, as *Stewart* makes clear, the existence of a mandatory forum-selection clause does not by itself dispose of a motion to transfer under § 1404(a)." *Interested London Underwriters v. Kelly Global Logistics, Inc.*, No. 06 Civ. 5845 (PKL), 2008 WL 558038, at *6 n.9 (S.D.N.Y. Feb. 29, 2008) (citing *Stewart*, 487 U.S. at 32).

The Court first finds that this action could have been brought in the Middle District of Florida, where Hipple resides. *See* 28 U.S.C. § 1391(a). However, the Court declines to transfer the case at this point because an analysis of the *D.H. Blair* factors does not weigh in favor of a transfer. The Southern District of New York is Plaintiffs' choice of forum, and there appear to be no witnesses who are unwilling to travel to the Southern District of New York. Nor does the location of relevant documents or the locus of operative facts favor one jurisdiction over another. Perhaps most importantly, Hipple appears to have himself consented to this venue. A copy of the Subscription Agreement at issue in this case, dated March 31, 2005 (the "Agreement"), was submitted to the Court as part of Plaintiffs' previously filed motion for summary judgment.[1] (*See* Affidavit of Wayne Coleson ("Coleson Aff.")

---

[1] On the direction of the Court, Plaintiffs have not submitted opposition papers to Hipple's motion. However, the Court finds that the record in this case contains ample evidence in support of Plaintiffs' assertions that summary judgment in favor of Hipple is inappropriate. This evidence was submitted in conjunction with Plaintiffs' previous summary judgment motion and includes, *inter alia*, (1) the Agreement; (2) the affidavit of Wayne Coleson, CEO of Redwood Grove Capital Management, LLC, the Plaintiffs' Investment Advisor; and (3) undisputed facts as set forth in the parties' previously filed 56.1 statements. Hence, the Court will refer to this evidence in analyzing Hipple's arguments.

4

¶ 4, Ex. A.) The Agreement contains a broad forum selection clause:

> Any action brought by either party against the other concerning the transactions contemplated by this Agreement shall be brought only in the state courts of New York or in the federal courts located in the state of New York. **The parties and the individuals executing this Agreement and other agreements referred to herein or delivered in connection herewith on behalf of the company agree to submit to the jurisdiction of such courts and waive trial by jury.**

(Agreement at § 13(e) (emphasis in original).) Furthermore, § 13(f) of the Agreement provides that

> Subject to Section 13(e) hereof, each of the Company, Subscriber and any signator hereto in his personal capacity hereby waives, and agrees not to assert in any such suit, action or proceeding, any claim that it is not personally subject to the jurisdiction in New York of such court, that the suit, action or proceeding is brought in an inconvenient forum or that the venue of the suit, action or proceeding is improper.

(Agreement at § 13(f).)

The evidence demonstrates, and Hipple does not contest, that Hipple signed the Agreement in his capacity as President and CEO of iWorld. Accordingly, he is bound by the Agreement in that capacity. (*See* Pls.' 56.1 ¶ 7; Coleson Aff. ¶ 4; Jan. 29 Tr. at 17.)[2]

Thus, because Hipple has made no showing why the forum selection clause should not be honored here, and because the *D.H. Blair* factors weigh against a change of venue, Hipple's motion to transfer this case to the Middle District of Florida is denied.

B. Breach of Representation

Hipple contends that there is no separate cause of action for breach of representation under New York law. (Hipple Mem. at 18-19; Jan. 29 Tr. at 42-43.) Because a motion to dismiss this claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure would be untimely, the Court interprets this argument as a motion for judgment on the pleadings pursuant to Rule 12(c).

"The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006). In the recent case of *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (2007), the Supreme Court addressed the standard for assessing the adequacy of pleadings, and "announced the 'retirement' of the oft-quoted 'no set of facts' language from *Conley v. Gibson*, 355 U.S. 41, 45-47 (1957), adopting in its place a plausibility

---

[2] Where only one party's 56.1 statement is cited, the other party does not dispute the fact asserted or has offered no admissible evidence to refute that fact. The Court notes that Hipple did not file a 56.1 statement in conjunction with the instant motion, contrary to the requirements of Local Civil Rule 56.1.

5

requirement." *Life Prod. Clearing, LLC v. Angel*, 530 F. Supp. 2d 646, 651 (S.D.N.Y. 2008). The Second Circuit in turn has interpreted *Bell Atlantic* to require that courts apply "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (emphasis in original). "In deciding a motion for judgment on the pleadings, a court may consider the pleadings and attached exhibits, statements, or documents incorporated by reference, and matters subject to judicial notice." *Life Prod. Clearing*, 530 F. Supp. 2d at 651. The district court must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor. *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001).

This issue of the existence of the breach of representation claim was addressed at the conference on January 29, 2008, at which time the Court asked Plaintiffs' counsel if this claim was distinguishable from a common law fraud claim. (*See* Jan. 29 Tr. at 43.) Plaintiffs' counsel responded that he believed so, although he was "sure" they were "pretty similar." (*Id.*) The Court instructed Plaintiffs' counsel that if he wanted to "add anything to it," he could. (*Id.*) Nothing further has been submitted from Plaintiffs on this issue in response to the Court's instruction.

Upon further research, the Court has identified no cases that demonstrate the existence of this cause of action in New York, nor have Plaintiffs identified any legal authority for a claim for "breach of representation." As such, Hipple's motion for judgment on the pleadings is granted with respect to this claim.

C. Section 10(b) and Rule 10b-5

Hipple's third argument consists of two parts. First, he claims that on its face, the Amended Complaint fails to allege a cause of action under Rule 10b-5 or Section 10(b) of the Exchange Act, specifically in that it fails to allege scienter. (Hipple Mem. at 12-15.) Second, he claims that there is no evidence in the record to support a finding that he violated § 10(b) or Rule 10b-5. (*Id*. at 10-13.)

1. Rule 12(c)

The Court interprets Hipple's second argument, that the Amended Complaint does not sufficiently plead scienter, as a motion for judgment on the pleadings pursuant to Rule 12(c).

As discussed above, "[t]he standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Cleveland*, 448 F.3d at 521. This standard "obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." *Iqbal*, 490 F.3d at 157-58. "In deciding a motion for judgment on the pleadings, a court may consider the pleadings and attached exhibits, statements, or documents incorporated by reference, and matters subject to judicial notice." *Life Prod. Clearing*, 530 F. Supp. 2d at 651. The district court must accept all allegations in the complaint as true and draw

6

all inferences in the non-moving party's favor. *Patel*, 259 F.3d at 126.

"In order to state a claim under [§ 10(b) and Rule 10b-5], a complaint must allege that the defendants acted with scienter." *Novak*, 216 F.3d at 306; *see also Lentell*, 396 F.3d at 172. Scienter is defined as "a mental state embracing intent to deceive, manipulate, or defraud. . . ." *In re Global Crossing, Ltd. Sec. Litig.*, 322 F. Supp. 2d 319, 329 (S.D.N.Y. 2004) (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976)). To plead scienter, "plaintiffs must 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind' . . . ." *Novak*, 216 F.3d at 311. Under this standard, "the inference may arise where the complaint sufficiently alleges that the defendants: (1) benefitted in a concrete and personal way from the purported fraud . . . (2) engaged in deliberately illegal behavior . . . (3) knew facts or had access to information suggesting that their public statements were not accurate . . . or (4) failed to check information they had a duty to monitor . . . ." *Id.*

The Court finds that scienter is sufficiently pled in the Amended Complaint. Plaintiffs allege in the Amended Complaint that certain representations made by Hipple in the Agreement "were false and known by iWorld and Hipple to be false when made." (Am. Compl. ¶ 17.) Plaintiffs further allege that "Hipple's failure to disclose the Deferred Subscription Agreement was intentional and done for the express purpose of improperly obtaining [Plaintiffs'] purchase of the Convertible Notes and Warrants . . . Hipple and iWorld knew that any disclosure of the Deferred Subscription Agreement ran the risk that [Plaintiffs] would not purchase the Convertible Notes and Warrants." (*Id.* ¶ 20.) Furthermore, Plaintiffs allege that iWorld either did not make public filings, or their public filings were not accurate in the weeks prior to the execution of the Agreement, and that Defendants failed to make these filings "for the express purpose of improperly obtaining [Plaintiffs'] purchase of the Convertible Notes and Warrants." (*Id.* at 18-19.) Taken as true, these allegations together give rise to a "strong inference" of fraudulent intent under *Novak*; as such, the element of scienter has been sufficiently pled. *See Novak*, 216 F.3d at 311; *Lentell*, 396 F.3d at 172.

Moreover, Plaintiffs have done more than sufficiently plead scienter. As discussed below, they have proffered evidence sufficient to give rise to a strong inference of scienter. Accordingly, Hipple's motion for judgment on the pleadings pursuant to Rule 12(c).

2. Summary Judgment

The Court shall construe Hipple's first argument, that there is an absence of evidence in the record to support the claim that he violated § 10(b) or Rule 10b-5, as a motion for summary judgment under Rule 56 on those claims. For the reasons that follow, that motion is denied.

To withstand summary judgment on a claim for relief under § 10(b) and Rule 10b-5, plaintiffs must proffer evidence that defendants "(1) made misstatements or omissions of material fact; (2) with scienter; (3) in connection with the purchase or sale of securities; (4) upon which plaintiffs relied; and (5) that plaintiffs' reliance was the

proximate cause of their injury." *Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 172 (2d Cir. 2005) *(quoting In re IBM Sec. Litig.,* 163 F.3d 102, 106 (2d Cir. 1998)).

Plaintiffs claim that Hipple committed a violation of § 10(b) and Rule 10b-5 because he fraudulently induced Plaintiffs to enter into the Agreement by signing the Agreement in connection with the sale of the Convertible Notes to Plaintiffs, knowing that the Agreement contained the false statement that iWorld had "no outstanding agreements . . . affecting [iWorld's] common stock or equity . . . . except as described on Schedule 5(d)." (*See* Coleson Aff. ¶¶ 4-5, 8-9 and Ex. A § 5; Pls.' 56.1 ¶ 11.) The evidence proffered by Plaintiffs in support of this claim includes, *inter alia*, (1) the language of the Agreement itself (*see* Coleson Aff. Ex. A); (2) the existence of the Deferred Subscription Agreement between iWorld and La Jolla Capital ("DSA"), which was entered into two weeks before the purchase of the Convertible Notes by iWorld and not disclosed on Schedule 5(d) (*see* Coleson Aff. ¶ 10, Ex. D); (3) the failure of iWorld to make required public disclosures regarding the existence of the DSA (*see id.* ¶¶ 10-11); (4) a sworn affidavit by Plaintiffs' Investment Advisor stating that Plaintiffs would not have entered into the Agreement had they known about the DSA, which constituted an "outstanding agreement" affecting iWorld's stock (*see id.* ¶¶ 1, 8-9); (5) a sworn affidavit by Plaintiffs' Investment Advisor stating that Plaintiffs have suffered damages in the amount of $500,000 as a result of iWorld's default, which they would not have incurred but for the signing of the Agreement based on the misrepresentations and omissions (*see id.* ¶¶ 11-12); and (6) evidence sufficient to give rise to a "strong inference" that Hipple acted with scienter in signing the Agreement, including Hipple's duties and position at iWorld and his knowledge of the DSA (*see* Pls.' 56.1 ¶ 7; Coleson Aff. Ex. H). Hipple has failed to offer any evidence to undermine the veracity of Plaintiffs' proffered materials, other than Hipple's conclusory denials of liability. (*See generally* Hipple's Affidavit in support of this motion ("Hipple Aff."); Hipple's Affidavit dated Jan. 21, 2006 ("Hipple 2006 Aff."); Hipple's response to Plaintiff's 56.1 Statement, dated June 26, 2006 ("Hipple's 56.1 Opp.").) Such conclusory assertions are insufficient to satisfy Hipple's burden on summary judgment, and, if anything, serve to highlight disputed issues of fact making summary judgment inappropriate.

Given this evidence, summary judgment in favor of Hipple on the § 10(b) and Rule 10b-5 claims is not warranted. Plaintiffs have proffered sufficient evidence "to permit a reasonable juror to return a verdict in his or her favor" on the elements of the claims. *See Burke*, 981 F.2d at 1379. Moreover, the evidence as a whole indicates that there are genuine issues of material fact that preclude a finding of summary judgment. *See Celotex*, 477 U.S. at 322; *Binder & Binder*, 481 F.3d at 148. While Hipple has also presented evidence in support of his case, the Court must construe the evidence in the light most favorable to Plaintiffs. Accordingly, Hipple's summary judgment motion on the sufficiency of the evidence in support of the § 10(b) and Rule 10b-5 claims is denied.

### D. Common Law Fraud

Hipple next claims that Plaintiffs have not adequately alleged common law fraud against

him in the Amended Complaint. (Hipple Mem. at 17-18.) Because Hipple has also asserted that Plaintiffs "have offered nothing since the filing of the Amended Complaint to support such a claim now," the Court interprets this motion as a motion for summary judgment on the common law claim, pursuant to Rule 56. *See McPherson*, 174 F.3d at 280. For the reasons that follow, that motion is denied.

1. Application of New York Law

As an initial matter, the Court holds that New York law is the proper law to apply to the fraud claim. Hipple asserts that the law of Florida, California, or Texas should apply, though he does not select one over the other, because the case has no connection to New York. (Hipple Mem. at 5-6; Jan. 29 Tr. at 18.) Plaintiffs respond that the same section of the Agreement governing forum selection governs the choice of law question, because it includes a clause whereby the parties agreed that the Agreement would be "governed by and construed in accordance with the laws of the State of New York without regard to conflicts of laws principles that would result in the application of the substantive laws of another jurisdiction." (Agreement at § 13(e); Jan. 29 Tr. at 18.)

It is well settled that in diversity cases, a federal court must look to the choice-of-law rules of the forum state. *See Krock v. Lipsay*, 97 F.3d 640, 645 (2d Cir. 1996). New York law generally gives full effect to parties' choice-of-law provisions. *Id.* (citing *Woodling v. Garrett Corp.*, 813 F.2d 543, 551 (2d Cir. 1987)). However, "[u]nder New York law, a choice-of-law provision indicating that the contract will be governed by a certain body of law does not dispositively determine that law which will govern a claim of *fraud* arising incident to the contract." *Id.* (citations omitted, emphasis in original). "Under New York law, in order for a choice-of-law provision to apply to claims for tort arising incident to the contract, the express language of the provision must be 'sufficiently broad' as to encompass the entire relationship between the contracting parties." *Id.* (citing *Turtur v. Rothschild Registry Int'l, Inc.*, 26 F.3d 304, 309-10 (2d Cir. 1994)). In *Krock*, the Second Circuit found that the choice-of-law provision at issue in that case, which stated that the document "shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts," was not sufficiently broad to bring the tort claims within the purview of the choice-of-law provision. *Id.*

Here, the choice-of-law clause at issue uses the same language as the clause at issue in *Krock*. (*See* Agreement at ¶ 13(e) ("This Agreement shall be governed by and construed in accordance with the laws of the State of New York . . . .").) Hence, in accordance with *Krock*, the Court finds that the choice-of-law clause does not govern the common law fraud claim asserted by Plaintiffs against Hipple. As a result, the Court must determine which body of law properly applies to the two tort claims.

New York has adopted the "interest analysis" approach to determinations on choice of law. *See White Plains Coat & Apron Co., Inc. v. Cintas Corp.*, 460 F.3d 281, 284 (2d Cir. 2006). Under that analysis, "'if conflicting conduct-regulating laws are at issue, the law of the jurisdiction where the tort occurred will generally apply because that

jurisdiction has the greatest interest in regulating behavior within its borders.'" *Id.* (quoting *Cooney v. Osgood Mach., Inc.*, 81 N.Y.2d 66, 72 (1993)). However, a court need not "embark on a choice-of-law analysis in the absence of an 'actual conflict' between the applicable rules of two relevant jurisdictions." *Fin. One Pub. Co. Ltd. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 331 (2d Cir. 2005) (citing *In re Allstate Ins. Co. (Stolarz),* 81 N.Y.2d 219 (1993)). "The New York Court of Appeals has held that '[t]he first step in any case presenting a potential choice of law issue is to determine whether there is an actual conflict between the laws of the jurisdictions involved.'" *Wall v. CSX Transp., Inc.*, 471 F.3d 410, 415 (2d Cir. 2006) (quoting *In re Allstate*, 81 N.Y.2d at 223). Hence, as a first step, the Court must determine whether there is a conflict between New York law, and that of California, Texas, or Florida, sufficient to require the Court to choose the law of one of those states over New York law. *Id.*

The elements of a fraud claim under New York law are "(1) a misrepresentation or an omission of material fact which was false and known to be false by the defendant, (2) the misrepresentation was made for the purpose of inducing the plaintiff to rely upon it, (3) justifiable reliance of the plaintiff on the misrepresentation or material omission, and (4) injury." *Guilbert v. Gardner*, 480 F.3d 140, 147 n.5 (2d Cir. 2007) (citing *Jablonski v. Rapalje*, 788 N.Y.S.2d 158, 162 (2d Dep't 2005)). Having reviewed the elements of a fraud claim under Florida law,[3] Texas law,[4] and California law,[5] the Court concludes that there is no conflict between New York law and the law of these jurisdictions. Hipple has not suggested otherwise; indeed, Hipple has made no showing in his papers that there is any conflict between the laws of New York, and those of Florida, Texas, or California, nor whether the application of the laws of those

---

[3] "Under Florida law, the essential elements of fraud include: (1) a false statement concerning a specific material fact; (2) a showing that the representor knew or should have known that the representation was false; (3) an intent that the representation induce another to act on it; and (4) consequent injury to the party acting in justifiable reliance on the representation." *Babbit Elecs., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1176-77 (11th Cir. 1994) (citations omitted).

[4] Under Texas law, a party must plead six elements to make out a fraud claim: "(1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury." *Concorde Funds, Inv. v. Value Line, Inc.*, No. 04 Civ. 9932 (NRB), 2006 WL 522466, at *5 n.9 (S.D.N.Y. Mar. 2, 2006) (quoting *In re FirstMerit Bank,* 52 S.W.3d 749, 758 (Tex. 2001)). The reliance must be justifiable. *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, No. 05 Civ. 4248 (TPG), 2007 WL 2428474, at *14 (S.D.N.Y. Aug. 28, 2007) (citing *Ernst & Young, LLP. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001) and *Fed. Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991)).

[5] The elements of fraud under California law are: "(1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or *scienter*); (3) intent to defraud, *i.e.,* to induce reliance; (4) justifiable reliance; and (5) resulting damage." *BFI Group Divino Corp. v. JSC Russian Aluminum*, 481 F. Supp. 2d 274, 282 (S.D.N.Y. 2007) (quoting *Robinson Helicopter Co. v. Dana Corp.*, 102 P.3d 268, 274 (Cal. 2004)).

jurisdictions would substantially impact the outcome of this matter. As there is no conflict between the law of New York and the law of the proposed alternative jurisdictions on the fraud claim, there is no need for further analysis on that claim, and New York law will apply. *See Fin. One Pub. Co. Ltd.*, 414 F.3d at 331.

2. Sufficiency of the Evidence

The Court finds that Plaintiffs have proffered sufficient evidence in support of each element of the claim for common law fraud to defeat summary judgment, in large part for the same reasons discussed above in relation to Hipple's arguments on the § 10(b) and Rule 10b-5 claims. First, Plaintiffs have offered evidence in support of their claim that Hipple and iWorld made misrepresentations of material fact in the Agreement itself, as well as material omissions in failing to make certain public disclosures. (*See* Coleson Aff. ¶¶ 4-5, 10-11 and D; Agreement at § 5.) It is undisputed that the Agreement was signed by Hipple and contained representations that iWorld had no other outstanding agreements that would affect the stock of the company. (*See* Pls.' 56.1 ¶ 5; Coleson Aff. ¶¶ 4-5; Agreement at § 5.) Plaintiffs also assert that the representations were false, due to the existence of the DSA, and that it is clear that Hipple knew they were false because Hipple knew of the existence of the DSA, which Hipple concedes in his affidavit in support of this motion. (*See* Coleson Aff. ¶¶ 9-10; Hipple Aff. ¶ 13.) Plaintiffs have also proffered evidence sufficient to raise the inference that Hipple and iWorld made the misrepresentations because they feared that disclosure of the DSA would cause Plaintiffs to back out of the purchase of the Convertible Notes and Warrants, which, Plaintiffs contend, they would have. (Pls.' 56.1 ¶ 7; Coleson Aff. Ex. H.) Plaintiffs have also submitted evidence that they relied on the misrepresentations in the Agreement and iWorld's failure to disclose the Deferred Subscription Agreement, that Plaintiffs would not have entered into the Agreement if the existence of the DSA had been disclosed or if the Agreement had not contained the representations in §5, and that they have been injured in the amount of $500,000 as a result. (*See* Coleson Aff. ¶¶ 1, 8-9, 11-12.)

In sum, there is sufficient evidence in the record which, viewed in the light most favorable to Plaintiffs, demonstrates that there are genuine issues of material fact that preclude summary judgment on this claim. Accordingly, Hipple's motion for summary judgment on the common law fraud claim is denied.

E. Section 20(a)

Hipple's final arguments relate to the § 20(a) claims of control person liability.[6] Because Hipple points to the absence of any evidence to support an essential element of

---

[6] It is important to note from the outset that courts "have consistently held that '[a]lthough a defendant ultimately may not be held liable as both a primary violator and a controlling person, [pleading] such alternative theories of liability [is] permissible.'" *In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 661 (S.D.N.Y. 2007) (quoting *In re Parmalat Sec. Litig.*, 375 F. Supp. 2d 278, 310 (S.D.N.Y. 2005)). Hence, there is nothing improper about alleging alternative theories of liability here; Hipple might be liable for a primary violation, or pursuant to the control person provision.

one of Plaintiffs' claims, *see Bay*, 936 F.2d at 116, the Court considers this motion as a motion for summary judgment pursuant to Rule 56.

Hipple asserts that he is entitled to summary judgment on the § 20(a) claim because he was not a "control person," because he acted in good faith at all times and did not induce the acts alleged in the Amended Complaint, and because there is no "primary violator" pursuant to Section 20(a). (*See* Hipple Mem. at 19-27.) The Court shall address each argument in turn.

### 1. Control Person Liability

Hipple first claims that he cannot be considered a "control person" pursuant to Section 20(a). The Court finds that there is sufficient evidence in the record to permit the trier of fact to find that Hipple was a control person, and Hipple's motion is therefore denied.

Section 20(a) states that:

"Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action."

15 U.S.C. § 78t(a). "To establish a *prima facie* case of control person liability, a plaintiff must show (1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007).

Hipple's argument that he cannot be a control person is without merit. The evidence in the record, construed in the light most favorable to Plaintiffs, reflects that Hipple (1) was the Chairman, Chief Executive Officer, Treasurer and a director of iWorld; (2) was the lead negotiator for iWorld in connection with the Agreement; and (3) signed the Agreement on behalf of iWorld. (*See* Coleson Aff. ¶¶ 3-4 and Ex. A; Pls.' 56.1 ¶ 7; Hipple 2006 Aff. ¶¶ 2, 12, 17.) In addition, by Hipple's own account, he owned approximately 13% of iWorld shares. (Jan. 29 Tr. at 31.) These facts clearly constitute "evidence in the record . . . from which a reasonable inference in [Plaintiffs'] favor may be drawn" on the issue of whether Hipple was a control person under § 20(a). *Binder*, 481 F.3d at 148. Accordingly, Hipple's motion for summary judgment on the grounds that he was not a control person of iWorld is denied.

### 2. Hipple's "Good Faith" Assertions

Hipple's second argument in support of his motion is that he acted in good faith and did not induce any of the acts as alleged by Plaintiffs. As discussed above, Plaintiffs have proffered sufficient evidence to give rise to a strong inference that Hipple acted with scienter in signing the Agreement, including Hipple's duties and position at iWorld and his knowledge of the DSA. (*See* Pls.' 56.1 ¶ 7;

Coleson Aff. Ex. H.) This evidence, viewed in the light most favorable to Plaintiffs, is sufficient to defeat Hipple's assertions that he acted in good faith, at least at the summary judgment stage. Accordingly, Hipple's motion for summary judgment on the ground that he acted in good faith is denied.

### 3. Primary Violator

Finally, Hipple's argument that there is no primary violator is without merit. Hipple is correct that where there is no primary violator, there can be no control person liability. *See Rombach v. Chang,* 355 F.3d 164, 177-78 (2d Cir. 2004). However, Plaintiffs have proffered sufficient evidence to support a claim against iWorld for violations of Section 10(b) and Rule 10b-5. That evidence is essentially the same as the evidence against Hipple. As such, there is sufficient evidence in the record to establish a primary violation by iWorld, and summary judgment is not appropriate on that point. Accordingly, Hipple's motion for summary judgment on the grounds that there is no primary violator is denied.

### IV. CONCLUSION

For the foregoing reasons, Hipple's motions are GRANTED in part, DENIED in part. Hipple's motion for judgment on the pleadings with respect to the claim for breach of representation is GRANTED. Hipple's remaining motions are DENIED. The Clerk of the Court is directed to terminate the motion at Document No. 81.

SO ORDERED.

RICHARD J. SULLIVAN
United States District Judge

Dated: March 26, 2008
New York, New York

\* \* \*

Plaintiff is represented by Kenneth A. Zitter, Esq., and Edward Grushko, Esq., Law Offices of Kenneth A. Grushko, 260 Madison Avenue, 18th Floor, New York, New York 10016. Defendant Robert Hipple appears *pro se* in this matter.

13